Juliana Drows may it please the court, I'm here on behalf of Mr. Prasad. I would like to start with the forfeiture issue if the court pleases, unless the court would prefer for me to go somewhere else. My questions revolve around forfeiture. Yes? I just said that my questions certainly revolve around forfeiture. Sorry, my computer is really messing up. Should I just do this by the phone, do you think? That's fine. Okay. Okay, let me because my phone now went off. All right. I would like to address the forfeiture issue. The court, the entire amount was forfeited and that included all of the Those wages were not used by Mr. Prasad. Mr. Prasad only got 20% for his own use. The forfeiture property, under Honeycutt, forfeiture property is defined solely in terms of personal possession and use. It's limited to the property the defendant himself obtained. Mr. Prasad only legitimate real work, work for which they deserve to be paid their wages. All of the cases that the U.S. attorney relies upon in their brief cases, all of the proceeds were the result of actual illegal activities, for example, selling drugs, money laundering, and that sort of thing. And those? Well, here he was selling, he was defrauding the government. He was not defrauding the, was he defrauding, he was defrauding the workers. Or maybe he was defrauding. No, that's right. He was not He was obtaining a visa. He was not defrauding the people they actually worked for. Although they, because they hired people who had visas, I don't know if they had any responsibility to check into the validity of the visas, but they had visas, and they did actual work. So it's an unusual setup, because the cases about proceeds are usually cases in which the money that was not profit was used to make the profit, right, by the cost of various, various Well, I just have a hard time getting my head around whether the fees he was getting from the people they actually worked for was money that was for the illegal visa, or was for the work that they did. He needed to get the illegal visa first, and he defrauded the government in doing it. But the money that was That's correct. And the profit, the money that he actually got for obtaining the visas was 20% of the actual wages paid to the beneficiaries. And there can't be any doubt that the beneficiaries who actually work in legitimate computer jobs should be paid. You know, all the cases, for example, But, but if we weren't, hypothetically, if we were to affirm the district court and say, No, no, he actually obtained this money, it was in his possession and control. That doesn't mean the people who worked and got the money would have to pay it back. I mean, that the forfeiture order isn't against them. That's exactly right. No, they were saying they deserve to be paid, they were paid, and they're not in any danger of being required to I'm sorry. You're absolutely right. I really do apologize. I am so computer incompetent. But um, no, you're exactly right. The people who the beneficiaries earned that money, they actually work for it. And you're right, they would not have to send it to him. That's what he had at the end, but he had control of all of the money. And couldn't we look at this as, you know, for his, his business model, if you want to call it that, which is to obtain these visas, and then he gets a percentage he gets paid. That's the cost of his doing business to pay the workers. That's the cost of doing the criminal enterprise here is that he pays the workers just like if you're dealing narcotics, you pay the other people in the trafficking chain. That's part of the price of the business. But you're still you had control of this money. He's it's not like a joint and several liability situation like honeycut where the person never had control of the money. Mr. Prasad here, I think it's undisputed in the record took in the money and then paid some out to the workers. So why I'm sorry, that's a very long winded wind up to a question. But why is that not the cost of his his business plan? Because the what honeycut talks about is, is that it has to be in the person's possession and use and profit. And his only is that you relied on honeycut, which just seems totally awful. And it's not helpful. To me. I mean, honeycut is about who is the person who is getting the proceeds, not what the proceeds are. And I believe there are a set of cases about what the entire Mr. Christian, you are frozen and you're not coming across. Everybody's Council's closing on my end. I don't know. Can you hear me now? Yes. Yes. Okay. So are you are you familiar with the United States versus Santos Council? For example, that's one of the cases. It falls within the class of cases. I think she means where the United States Supreme Court looked at the definition of proceeds and whether that's talking about profits or overall gross receipts. Have you are you familiar with that case? Yes, let me get my nose. In that case, the Supreme Court decided the word proceeds is vague. And then they look to the overall context of the statute that in that case, they reached one result and decided that there was an equal pose and they just and they decided the case along the lines of the rule of lenity. But in this case, the statute we're talking about, if we assume proceeds is a is a is a vague term, an ambiguous term that could mean, you know, the profits or the overall gross receipts. And I think we look at the statute and the statute here in this case is a statute that talks about all property or covers rather all property that is used to facilitate or is intended to be used to facilitate the commission of the offense because his ability to perpetuate the commission of the offense for months and months and months depended upon him taking the 20 percent and giving the 80 percent to the workers or otherwise this offense would not have been ongoing. So why should I decide that the 80 the other 80 percent was not used to facilitate his offense? Because that the the money that was paid to the beneficiaries was actually earned by them through legitimate work, which is very different than in all of the other cases cited by the attorney general. Well, I mean, if, for example, you have a drug dealer who gets money for his drugs and he then buys baggies to to put his drugs in, the person is not an illegal activity. But my understanding is that he would be liable for the entire receipts. This has a different feel to me, though, because he is I mean, first of all, is that right? Is that hypothetical? Right. Right. But but but the difference in what you're talking about is this is that costs, the costs of doing business, his cost of doing business with his computer, his his supplies, stationery, his phone bill and all of that, that the wages that the beneficiaries earned were not his costs. Why? I mean, he is getting money from a contracting company to supply certain labor. And what if his cost is to pay the labor? Wasn't that the cost of the company that got the work? No, because they're not they didn't they are contracting with him. And he's got gross receipts. And from his gross receipts, he has to pay the light bill. Right. And all of the other expenses. And he has to pay the hired workers. That's part of his overhead. Why is that analysis wrong? Why isn't that part of what he's doing to facilitate the commission of the crime? Again, I keep going back to the same thing, because in this case is very different than all the other cases, because the work was actually legitimate work that they earned money for, that they earned. So the difference, I guess, what you're saying is that a drug runner, a mule is is is hired labor. And that offense in and of itself is unlawful. And these folks who are working, right? Okay, I'll grant you that. I think that's a correct observation. I just don't know why it matters under cases like the ones I was just mentioning with Santos, when we look to the statute and, and see that it sweeps as broadly as it does all property used to facilitate the crime of conviction. I just keep going back to the whole fact that that this, as Judge Breyer said, when he sentenced, Mr. Prasad, he found, you know, this case different than most cases that he that he has dealt with. And this one, this may be this, I mean, all the money went to him and then flow to the workers. He kept 20%. But it's no different than as if the companies paid the workers 80% and gave him a 20% and paid him 20%. Right? Well, that's basically what happened. Well, except the money went through him. That was the difference. Correct. With the understanding that the worker would get 80%. Right. So it seems to me your argument is that the fact that it flowed through him is sort of a fortuity, or it's just the way they happen to set it up. But what he was being, the payment for his legal activity, his legal activity was over once he got the 20%. That's essentially what you're saying. Correct. The problem is that if he didn't supply, people had to have jobs, or he wouldn't have gotten a 20%. Jobs, for so much will lead to invalid. His scheme wasn't over. His scheme depended upon this perpetuation month by month by month, the paychecks. Did it not? Well, no, his scheme was over once he submitted the petition. Once they got the job, his dealings with the immigration authorities was over. Well, his dealings with the immigration authorities may have been over, but the entire, the worker that he placed for one year, two years, three years, that's the entire fraudulent representation, right? No, the fraudulent representation was actually in the petition. What the beneficiaries were doing in their actual work was not part of the fraud. Well, I guess I beg to differ, but I'm not sure if it's productive. I don't want to take up all of your time, but at least for when you come back on rebuttal, you know what the pressure point is. I guess because I have very little time remaining. I think the other briefs are pretty much covered in the briefs, unless the court has any questions. Thank you. And good afternoon, your honors. Audrey Hemisath on behalf of the United States. And I was trial counsel in this case as well. The forfeiture question here. Judge Breyer correctly ordered forfeited the entire, the entirety of the fraud proceeds in this case where the record incontrovertibly demonstrated that Mr. Prasad was the mastermind of the visa fraud scheme. And I want to pick up exactly where What's odd about this case is that the fraud was the government. I mean, in other instances in which, for example, you have a Ponzi scheme or something like that. And they tried to argue that the money that they paid out to some participants shouldn't count. The people being defrauded were the people who were getting the money and the fraud was all of the piece. I mean, here the fraudulent act was over. Unless, and this is a question for you, unless having these people work on an invalid visa through him was itself illegal. It's not what he was prosecuted for, right. It was not prosecuted for. He was prosecuted under the visa fraud statute. So it was the misrepresentation on the visa forms, but it's just what your honor said just a moment ago during Ms. Drozd's argument, which is that these people only have these jobs because of that visa fraud and they were working on those fraudulent visas as his employees. So he represented that a job was waiting. He represented that a job was waiting for these people. And in some instances, there was no job at all. Right. And they had to get a completely different work. And so, so, so the there's slightly different circumstances, but, but I think your theory has to be they wouldn't have been able to enter the country, period. Right. But that's correct. Right. So if they had entered, what would your question be? And what would your answer to be if they had entered the country, right. Pursuant to this fraudulent scheme and wound up working at a different job entirely. Do you think he's responsible for those proceeds? So a lot of them. That's exactly what happened. Because as the Cisco testimony demonstrated during trial, there weren't Cisco jobs for these people. So they went on to work other places. But on these H-1B visas. So they only hold any visas. We're still not communicating. Go ahead. Two businesses going. One is getting the invalid visas and the other is rent is basically operating as a like a temp agency or a company that that lends out employees and gets paid for it. And the second one. Um, I mean, the question is whether the second one is second is not the subject of a crime. Maybe it is a crime because the the people he's running out don't have valid visas and he knows it. But that's not what he's being charged with. Right. So that's why it's an odd case because he he's doing two things, one of which is over and the other one of which is the way he's getting paid for having these invalid visas, but he's not getting paid by the government. So, Your Honor, I would disagree with the premise that these are two separate actions or crimes. It's one illegal scheme. It's a visa fraud scheme. And the whole point of him obtaining these visas on behalf of these workers is to generate the stream of income for himself. That's the model. It's not an illegal model in that H-1B visa petitioners, if those jobs exist and the requirements of the statute are met, can form this business arrangement. But just as a drug dealer could employ employees to tend a garden, for example, or to drive cars for them, it's still wrapped up in this illegal conduct. And the illegal conduct here is the lies on the visa petitions that allow these workers to come to the United States at all. Are you familiar with United States versus Santos Council? Yes, I am, Your Honor. Do you want to speak to that and how that analysis maps onto this case? That might be helpful. Yes, Your Honor. So it's an interesting question because, as Your Honor knows, in our briefs, the parties focused more on the forfeiture statutes. And I would say probably the best case beside the Honeycutt case itself is the Casey case, the Ninth Circuit's Casey case. I think those are more directly on point as to what the meaning of proceeds is. And I would point specifically to the civil forfeiture statute where proceeds is defined as not limited to the net gain or profit realized from the offense. So here, Judge Breyer's application of this and the tracing in this case is about as clear as the court, I think, will ever see where it's just one person, one bank account and all of the fraud proceeds going into that one bank account. This is a perfect application of what receiving fraud proceeds means. And then once he distributes it back out from that bank account, that's in his discretion. He is the sole decider of what to do with it. That he honored the agreement that he had with these visa petitioners. It's really not a relevant point because it was his money to control. He set the terms with the employers of these people, what the salary would be. He determined out of view of those employers what he would go on to pay his employees. And so it is the application, I think, that epitomizes what receiving fraud proceeds means. Does your theory then rely on us applying the civil forfeiture statute? No, I wouldn't say that's the only place. We also said, of course, 982, which is requiring the forfeiture of any property that constitutes or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense. So that just brings us back to trying to figure out what proceeds means. That's what we were talking about earlier. That just really kind of begs the question of whether the proceeds or the profit or the gross proceeds. Right. So Casey would be the case that I would cite. And then Honeycutt itself. And then all the out of circuit authority that applies Honeycutt in the manner that Judge Breyer applied in here as well. So the entirety of the fraud proceeds, it would be consistent with that authority and consistent with the way the word proceeds is used in other parts of the forfeiture statute. What does Honeycutt have to do with this? I'm sorry, I couldn't quite catch that. What does Honeycutt have to do with this? I don't see what it has to do with this. Honeycutt has to do with it in that small excerpt that we pulled out in our brief, which announces the mastermind concept. So Honeycutt says that in a situation like this one where and the court made fact findings consistent with this, that there is one person who receives all of the fraud monies, one person who controls any distribution. But it doesn't tell you what the fraud money is. That's about whether different people. We don't have different people. We only have one person. The question is, what's the called fraud money? Is it everything that went into his bank account, even though 80% of it was going to go out for reasons that were not the payment for the fraud? Or is it the amount of money that was the payment for the fraud, which is 20%? It's the first one that your honor said, it's all the money that goes into his bank account. And as your honor correctly recognized before, that stream of money only exists because of the false representations on the visa petitions. Those monies would not be there if those individuals hadn't gotten these fraudulent visas. That was the scheme. And if he didn't give them the 80%, it seems to me it would all stop. If he didn't give them the 80% month to month to month, it would all come to a screeching halt. It could, but that would be speculation. These individuals were fairly vulnerable. They were here on his visas that he obtained for them. He's the petitioner. This isn't a hostile question. It seems to me that I'm trying to explain why I see this as an ongoing scheme that's perpetuated. And it wasn't a trick question. He needs to keep these workers happy, right? He needs to keep them paid and keep them working so he can keep getting his cut. But I guess I have a hypothetical for you that I think in my mind is how Honeycutt would apply. If these workers were somehow complicit in the fraud on the visa applications, if they knew that Cisco wasn't going to hire them and there was no job there and that the visas were forged, and so they had some criminal exposure, they were involved in the fraud. And then they got 80% of their salary, and that's all they received. Then under Honeycutt, Mr. Prasad would be the mastermind, and these people might be on the hook for forfeiture for the amount of money they actually made. But they never had the rest of the money. They didn't have the possession or control over it, and they're not jointly and separately liable for all of that. Would you agree that that would be a way to impose Honeycutt on our facts to make more sense as a fit? Exactly. I think that's exactly right, Your Honor. And it may be easier for people involved in a drug enterprise to recognize the criminality of what they're involved with. The trial testimony in this case was that many of these visa beneficiaries didn't even see these visas before they were going into the United States government. So they were really in the dark about what Mr. Prasad was doing. They were hoping they would work at Cisco and were quite disappointed that they didn't. And so the point being there that it's Mr. Prasad who's controlling this from behind the scenes. It's by design that he's keeping these individuals from asking to... If he had said to the people whom he was to whom he was sort of renting the employees, if he had said, pay them 80 percent of their salary, pay them X amount of money and pay me Y amount of money, numbers being the same, it would come out differently. That's an interesting question. If it didn't all flow through his bank account and he negotiated on their behalf, and then presumably from that point forward, they would be in direct conversation with the place where they were working, I think we'd have a harder argument. I think it's a fact-found decision of the court. So in terms of the economic reality here, your position just disregards the economic reality, which is those two things are exactly the same for purposes of the scheme and his stake in the scheme. I'm not sure I'm following that the economic reality is exactly the same. The economic reality is exactly the same as what I just described. It's just an administratively simpler way to do it, but it's the same. No, I don't agree with that at all, Your Honor. These workers were not in a position to request a particular hourly wage for themselves. No, I'm not supposing they were. I'm just supposing that he designated with the contracting company that you pay them X amount and you pay me Y amount. Oh, if he could have arranged that, I want to say it may be that there may have been testimony that this financial arrangement is how it's done for these visa servicing companies and that it flows typically to the employer, because these individuals weren't employees of, for example, Cisco or wherever they were, they were employees of Mr. Prasad's and that's the requirement. And that's true in perfectly legitimate operations also, because there are various reasons why the contracting employers or non-employers prefer not to be responsible for the taxes and for pensions and all kinds of things. They prefer not to be the employer. But again, that's kind of a different and legitimate scheme from the visa scheme. And there are many, many of these companies, particularly high-tech workers from India, which seems to be what's happening here, where the visas are legitimate, but they're still doing the same thing. That's right. The model isn't illegitimate. It's the idea that it's all premised on a lie. And then once they come, they are on those fraudulent visas. So the whole time that they're here and working, they're under Mr. Prasad's fraudulent visas that he obtained for them. Your Honor began saying, what's the actual illegal activity? That's the actual illegal activity that they are working under these fraudulent visas. And the entire flow of income in that summary chart we have in there, those are the fraud proceeds of this illegal scheme. And so the district court correctly ordered the entirety forfeited proceeds. Thank you, Your Honor. Thank you very much. Very briefly, Your Honor. Actually, Your Honor, you brought up an interesting point, which I hadn't thought about before. And that has to do with taxes. Certainly on his income taxes, he wouldn't have to report the entire amount that he received from the income. That's generally true under Santos and Casey and so on. If you have a business, you subtract your costs. I don't think that he would have gotten 1099s on that. He would not have to report all of that on his income and then subtract the 80% as costs. I'm going to need to look that up. But the question isn't whether it's reportable income to him. The question is different. It's whether it's proceeds of the offense. And so we have to figure out what proceeds mean. Does it mean gross or profits? Well, the intent of the forfeiture statutes was to eliminate profit. His profit, the amount that he actually got, and then he would eliminate his costs like phone, computer, was 20%. And, you know, a person does not obtain the property that is acquired by someone else. And as to the Casey case, in that case, the defendants there were convicted of distributing ecstasy. Everything they did was illegal. Everything that happened in this case was not illegal. Buying baggies is not illegal. Buying baggies is not illegal. It's only illegal if you use them as part of the scheme. But not only that, but buying the baggies is a cost and therefore your profit is less. But the amount paid to the beneficiaries is not equivalent to the baggies. It would be equivalent to paying the runner to deliver the ecstasy. Not the baggie that the ecstasy was. But that's still the same. If you're paying a runner, that's your cost. And you're still, as I understand the case law, that the money that you get and then pay the runner with is proceeds. But what the runner is doing is illegal. And so it's part of the entire scheme. And that's the difference. Well, except in one sense, what these people are doing is illegal because they're working on fraudulent reasons. Unless the court has any questions on any of the issues. Thank you very much. And again, I apologize for my computer issue. I'm having to do it this way. Hopefully we'll be over in some time. United States versus process submitted a mere recess. Thank you. Thank you.
judges: Berzon, Christen, Bade